# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 16-51034

————

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MICHAEL GEORGE IVERSON, also known as Michael George Byrnes, also known as Michael Byrns, also known as Michael G. Iverson, also known as Mike Bernard, also known as John P. Byrns, also known as Michael Barnes, also known as J. D. Barnes, also known as Michael Belanger, also known as Michael Byrne, also known as Mike Barnes, also known as Michael Belager, also known as J. D. Byrns, also known as Mike Byrns,

Defendant - Appellant

————

Appeal from the United States District Court
for the Western District of Texas

————

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Michael Iverson pleaded guilty to failure to register as a sex offender. He now challenges the length of his prison term and some of the conditions of his supervised release. The principal question his appeal raises is whether the Sentencing Guidelines' obstruction-of-justice enhancement covers false statements made to obtain appointed counsel. We join the majority side of a circuit split in concluding that it does.

No. 16-51034

## I.

Iverson was required to register under the Sex Offender Registration and Notification Act because he had been convicted of rape and kidnapping in New York. Because he was classified as a sexually violent offender under New York law, Iverson had to register every 90 days. Although Iverson moved to Texas in 2013, he never registered in the state. The authorities learned about Iverson's failure to register when they arrested him in Guadalupe County on a parole violation warrant.

Iverson was convicted of failure to register as a sex offender, and the district court imposed a sentence of thirty-seven months, which was the low end of the Guidelines range. That range included a two-level enhancement for obstruction of justice. The presentence report (PSR) recommended that enhancement because Iverson "admitted to intentionally lying to U.S. Pretrial Services regarding the value of his assets with intentions to make himself appear more destitute." That false statement, which the magistrate used to determine eligibility for court-appointed counsel, was included in a financial affidavit that Iverson signed under penalty of perjury. In the affidavit, Iverson claimed the value of three vehicles he owned was $5,500, much less than the $18,500 later listed in the PSR.

The district court also required Iverson to serve five years of supervised release after he finishes his prison term. As part of that supervision, it required that Iverson abide by a number of special conditions typically directed at sex offenders.

## II.

## A.

Iverson contests the obstruction enhancement on two grounds. He first argues that making misrepresentations on a pretrial financial affidavit does not fall within the Guidelines' definition of obstruction of justice because it does

not interfere with the investigation or prosecution of the offense. If Iverson loses that legal argument, he also maintains that he did not intentionally mislead the court in seeking appointed counsel.

The enhancement applies when "(1) the defendant willfully obstruct[s] or impede[s], or attempt[s] to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct relate[s] to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. On its face, that language appears to include lying to a court to obtain free counsel. Procuring the financial resources of a court under false pretenses interferes with the proper administration of the criminal justice system. And that obstruction is with respect to, and relates to—that is, it occurred in connection with—the prosecution of Iverson's failure-to-report offense. The commentary to this section also lists examples of obstruction, which include producing a "false, altered, or counterfeit document or record during an official investigation or judicial proceeding" and "providing materially false information to a judge or magistrate judge." *Id.* at cmt. n.4(C), (F). Lying on a financial affidavit used by a magistrate judge to assess eligibility for appointed counsel falls within either example.

We have applied the enhancement to false statements made to obtain appointed counsel, albeit in unpublished opinions only briefly addressing the question. *See United States v. Sanchez*, 227 F. App'x 412, 413 (5th Cir. 2007) ("False statements on a financial affidavit can serve as the basis for the obstruction adjustment."); *United States v. Resendez*, 1999 WL 499774, at *1 (5th Cir. June 16, 1999) (also finding no error in applying the obstruction enhancement because the defendant submitted a false financial affidavit). Other circuits have divided on this question. Two agree with our unpublished

cases in applying the obstruction enhancement to false statements made to a court in connection with obtaining appointed counsel. *See United States v. Hernandez-Ramirez*, 254 F.3d 841, 842-43 (9th Cir. 2001); *United States v. Ruff*, 79 F.3d 123, 125-26 (11th Cir. 1996); *cf. United States v. Greig*, 717 F.3d 212, 220-22 (1st Cir. 2013) (applying the enhancement to false statements made in connection with obtaining bail).

But the Second Circuit holds that a false statement that only has the effect of obtaining free counsel does not qualify for the obstruction enhancement. *United States v. Khimchiachvili*, 372 F.3d 75, 80, 82-83 (2d Cir. 2004). The disagreement among these circuits is over whether the defendant's false statements must have been intended to undermine the investigation or prosecution of the offense. *Compare id.* at 80 (holding that the enhancement only applies to conduct that is intended to affect or "interfere with the disposition of the criminal charges against a defendant"), *with Ruff*, 79 F.3d at 126 (explaining that false statements made to a judge need not have an "effect on the investigation or prosecution" and "the sole question is whether [the] statement was material").[1]

In concluding that a false statement to a court must be intended to prevent or delay justice, as opposed to just being the product of wanting a free lawyer, the Second Circuit cited its common understanding of obstruction and a 1998 amendment to the adjustment. *Khimchiachvili*, 372 F.3d at 78-80. As to the ordinary meaning of obstruction, the Second Circuit may have overlooked a distinction between false statements made to judicial officers and false statements to law enforcement officials that may nonetheless have an

---

[1] Although a circuit split exists about whether the two-level obstruction enhancement applies to false statements made to obtain appointed counsel, its practical effect may be minimal. Even though the Second Circuit does not believe two levels should be added for this conduct, it recognizes that a court can nonetheless consider this misconduct in its overall determination of the appropriate sentence. *Khimchiachvili*, 372 F.3d at 82-83.

No. 16-51034

effect on the proceeding. We have recognized that attempts to improperly influence judicial proceedings more directly interfere with the administration of justice than does similar conduct occurring in non-judicial contexts. *See United States v. Reeves*, 752 F.2d 995, 999 (5th Cir. 1985) (comparing an obstruction statute applying only to judicial proceedings, in which many acts can be deemed "*per se* corrupt," with an obstruction statute not limited to conduct in court, which thus required a heightened showing of corrupt intent). The commentary to the obstruction enhancement also makes this distinction, as the Eleventh Circuit has recognized. *See Ruff*, 79 F.3d at 125-26 (underscoring "the importance of the identity of the person to whom the false statement is provided" (quoting *United States v. Mafanya*, 24 F.3d 412, 415 (2d Cir. 1994))). As noted above, the commentary lists "providing materially false information to a judge" and producing a false document during an investigation or judicial proceeding as examples of obstructive conduct without any need to show the effect of that conduct. U.S.S.G. § 3C1.1 cmt. n.4(C), (F).[2] In contrast, when it lists the example of providing false information to law enforcement, it limits the enhancement to acts that "significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* at cmt. n.4(G); *see also Hernandez-Ramirez*, 254 F.3d at 844 (noting that lack of candor toward judicial officers is regarded differently than lack of candor toward law enforcement).

Admittedly, this distinction does less to undermine the second reason the Second Circuit cited for concluding that the enhancement does not cover false statements about indigence used to obtain counsel. *Khimchiachvili* highlighted a 1998 amendment to the enhancement commentary that added

---

[2] The Guidelines define a "material statement" as a statement "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6.

No. 16-51034

"lying to a probation or pretrial services officer about defendant's drug use" as an example of conduct not ordinarily covered. 372 F.3d at 78-79 (quoting U.S.S.G. § 3C1.1 cmt. n.5(E)). Although the Second Circuit analogized falsehoods about drug use to falsehoods in a CJA financial affidavit on the basis that neither necessarily thwarts the prosecution of the case, *id.* at 79-80, the drug situation addressed in commentary note 5(E) was a targeted Guidelines response to end a circuit split. *See* U.S.S.G. app. C, amend. 582. Regardless, when a false statement seeking appointed counsel is exposed there is a more direct effect on the administration of justice than occurs when a defendant lies about using drugs. The appointment of counsel affects the entirety of the case—discovery, plea or trial, sentencing, and notice of appeal—and, among other things, discovery of the false statement might cause delay if new counsel needs to be engaged.

We therefore follow the previous decisions of this court and those of the Ninth and Eleventh Circuits in holding that lying to a judicial officer to obtain appointed counsel qualifies as obstruction under the Guidelines.

B.

We have thus far assumed that Iverson did intend to mislead the magistrate, but he also disputes that factual finding. So we must decide whether the district court clearly erred in finding that Iverson lied about the value of his vehicles. *See United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008).

Iverson contends that the discrepancy between his statements to pretrial services and his statements to the probation officer merely resulted from confusion over whether to state the value of his assets as is (he notes that the motorcycle has a cracked block and broken-down engine) or in perfect running condition. He also argues that although at one point he possessed title to all

6

No. 16-51034

three vehicles, the "ownership is not mine because I don't have the titles in my name at all."

The problem with Iverson's claim is that the PSR asserts that he "admitted to intentionally lying to U.S. Pretrial Services" in an attempt to make himself appear more destitute and qualify for appointed counsel, and the district court implicitly adopted that finding. Even if Iverson now has an innocent explanation for his erroneous valuation, he cannot overcome the deference we afford the district court's contrary finding when one of the more powerful forms of evidence—a confession—supports it.

### III.

Iverson also challenges the special conditions he must follow while on supervised release. Those five conditions are:

> [First,] [t]he defendant shall abide by all program rules, requirements, conditions of the sex offender treatment including submission for polygraph and any other testing. The defendant will be required to make a copayment based on the defendant's ability to pay.

> Second, the defendant shall follow all other lifestyle or restrictions or treatment requirements imposed by the therapist and continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision. This includes not residing or going to places where a minor or minors are known to frequent without prior approval of the officer.

> Third, the defendant shall reside in a residence approved in advance by the probation officer.

> Four[th], the defendant shall have no direct or indirect . . . contact with victims without prior consent of the probation officer. . . .

> [Fifth]: If required to register under the Sex Offender Registration Act, the defendant shall submit his person and any other property, house, residence, vehicle, papers, computer, or electronic communication, or data storage and effects to search at any time

7

with or without a warrant by any law enforcement officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person and the probation officer in the lawful discharge of the officer's supervision function.

At the outset, we can readily vacate the second one as it suffers from the same defect that existed in identical conditions we have repeatedly rejected even on plain error review. *United States v. Morin*, 832 F.3d 513, 517-18 (5th Cir. 2016); *see also United States v. Huor*, 852 F.3d 392, 403 (5th Cir. 2017); *United States v. Pitts*, 670 F. App'x 375, 376 (5th Cir. 2016). We have done so because allowing private therapists to set restrictions on a defendant's conduct, without the court having to approve those restrictions, usurps a judge's exclusive sentencing authority. *Morin*, 832 F.3d at 517-18. We again exercise our discretion on plain error review to correct this unlawful delegation of sentencing authority and vacate the condition.

As to the remaining four conditions, Iverson argues that the district court failed to explain how they are reasonably related to factors the court must consider, which include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to protect the public from further crimes. 18 U.S.C. § 3583(d)(1) (referring to the factors in 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7)). The government argues that Iverson's objection to the conditions was not preserved because it was made "[o]n the grounds that failure to register is not a sex offense." This argument, however, ignores that Iverson then objected on the "additional ground" that "these sex offender conditions are not rationally related to the offense of conviction." That objection was sufficient to put the district court on notice that Iverson believed it was not complying with the statutory mandate to connect the conditions to the particular circumstances of the case. As a result, our review is for abuse of discretion. *United States v. Salazar*, 743 F.3d 445, 448-50 (5th Cir. 2014).

8

No. 16-51034

The district court did not give reasons for imposing the challenged conditions. We can nonetheless uphold them if the justification can be inferred from the record. *United States v. Prieto*, 801 F.3d 547, 550 (5th Cir. 2015); *Salazar*, 743 F.3d at 451. This case fits within that "it goes without saying" category. In 1995, Iverson and another assailant beat and raped a woman in New York. To keep the victim from speaking to police, Iverson and the other assailant brought her to a wooded area, gagged her, and tied her to a tree. The victim suffered "severe post-traumatic stress disorder as well as physical injuries from the beating." Iverson was convicted of rape and kidnapping, and was also charged with attempted murder. Despite undergoing sex offender and aggression replacement programming—both in and out of custody— Iverson was later fired from a carnival job in Louisiana after exposing himself to the wife of a political official.

With all this information detailed in the PSR, the district court reasonably concluded that the four remaining special conditions (numbers 1 and 3-5) were necessary to account for the history and characteristics of the defendant and to protect the public from additional crimes Iverson might be inclined to commit. Notably, the conditions—which order sex offender treatment, prevent contact with victims, require approval of any residence, and authorize a search upon reasonable suspicion of a probation violation or other unlawful conduct—are not as onerous as conditions often imposed on sex offenders. *See, e.g.*, *United States v. Miller*, 665 F.3d 114, 126, 133 (5th Cir. 2011) (affirming special conditions that barred the defendant from using computers or other electronic devices with Internet access, unless permitted by his probation officer); *United States v. Weatherton*, 567 F.3d 149, 152-54 (5th Cir. 2009) (upholding special conditions requiring the defendant to undergo "psychosexual evaluation" and refrain from possessing sexually explicit material). And it does not matter that the failure-to-register offense itself was

9

not one involving sexual conduct.  We have rejected challenges to conditions aimed at preventing further sex crimes even when imposed for a fraud offense because the conditions can take account of a defendant's "history and characteristics" and the need to "protect the public from further crimes."  *See id.* at 153 (citing 18 U.S.C. § 3583(d)(1)); *see also United States v. Dupes*, 513 F.3d 338, 343-44 (2d Cir. 2008) (upholding sex offender conditions for a defendant sentenced for securities fraud).

Although the better course is for a district court to explain why the special conditions of supervised release being imposed are needed to satisfy the statutory sentencing objectives, we find that connection can be inferred from the record in this case.

**\* \* \***

The judgement of the district court is AFFIRMED except for special condition two, which is VACATED, and the case REMANDED for further proceedings consistent with this opinion.