# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 29, 2021

Lyle W. Cayce
Clerk

No. 20-10849

United States of America,

*Plaintiff—Appellee*,

*versus*

Larry J. Tinney,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-204-1

Before Davis, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:

Larry J. Tinney is a serial sexual predator of children and people with disabilities. He violated the conditions of his supervised release, so the district court gave him an 18-month revocation sentence and another five years of supervised release. On appeal, he challenges the sentence and the supervised-release conditions. We affirm.

I.

Larry J. Tinney is a recidivist sex offender. Among his prior convictions are two for sexually assaulting two 13-year-old children and one

for aggravated sexual assault of a developmentally disabled 15-year-old. Those convictions make Tinney subject to the registration requirements in the Sex Offender Registration and Notification Act ("SORNA").

Tinney last registered as a sex offender in Springfield, Illinois, in June 2014. He moved in October 2014 but failed to update his address within the grace period, thus violating SORNA. *See* 18 U.S.C. § 2250(a). In July 2016, the United States Marshals Service found Tinney in a motel in Fort Worth, Texas. Tinney admitted that he obtained a Texas driver's license in March 2015 and had been in the State of Texas for over a year when he was arrested.

Tinney then pled guilty to violating SORNA. The pre-sentence report ("PSR") assigned Tinney a criminal history category of III and an offense level of 13, yielding a Guidelines range of 18 to 24 months' imprisonment. Because Tinney's "history of arrests, convictions, and lengthy sentences ha[d] not deterred [him] from engaging in criminal conduct," the PSR recommended an upward departure. The district court agreed. The court sentenced Tinney to 48 months' imprisonment and a five-year term of supervised release. As part of his supervised release, Tinney was directed to "answer truthfully all inquiries by the U.S. Probation Officer and follow [his] instructions."

After serving his custodial sentence, Tinney was released to a residential nursing and rehabilitation center. Almost immediately after arriving there, Tinney preyed on a younger patient with end-stage renal disease who was "incapable of consenting to any type of relationship." Tinney also did not meaningfully participate in sex offender rehabilitation treatment—he "refus[ed] to answer questions, passively resist[ed] by stating the questions were 'stupid[,]' and ignor[ed] the counselor at times." And during a polygraph examination, Tinney attempted to deceive examiners about his prior offenses. The Probation Office therefore petitioned to revoke

No. 20-10849

Tinney's supervised release. Tinney eventually admitted the factual allegations in the revocation petition.

The Probation Office classified Tinney's supervised-release violation as Grade C. *See* U.S.S.G. § 7B1.1(a)(3). It further assigned Tinney a criminal history category of III, which yielded a revocation-sentence range of 5–11 months. *See id.* § 7B1.4(a). The petition further noted that the commentary to § 7B1.4 provided that, "in the case of a Grade C violation that is associated with a high risk of new felonious conduct, an upward departure may be warranted." And it noted that the statutory maximum was 24 months.

At the revocation hearing, Tinney requested a revocation sentence at the low end of Guidelines range. In response, the district court stated:

> I do question whether a nursing home facility is the appropriate place for Mr. Tinney, *given his Category VI criminal history*, criminal history going back to 1968, that's the Lyndon Johnson administration, 52 years ago.
>
> I do question the wisdom of having him in a nursing home, but that's not my decision, that's another government agency.

Then after listening to Tinney's allocution, the district court sentenced Tinney to 18 months in prison. The district court explained its upward variance in part by stating:

> It's my determination that Larry J. Tinney . . . be committed to [prison] for a period of 18 months. That does represent an upward variance from the guidelines found in Chapter 7, which are five through 11 months. However, the Court feels that a period of 18 months is still necessary and appropriate in this case when I consider the facts of this case and the facts of these violations that I previously found.
>
> It's my position that a period of 18 months will sufficiently address Mr. Tinney's continuing high-risk conduct with a

3

No. 20-10849

cognitively-impaired female patient at [the nursing and rehabilitation center] and his disregard for the orders of the Court to engage in progress in sex offender treatment to reduce his risk of re-offense. As borne out in his original [PSR], Mr. Tinney has an extensive criminal history, indeed a history going back 52 years. He has also a prior *criminal history score of a VI*. His criminal history includes two prior convictions for sexual offenses and a prior sexual offense which was unprosecuted.

Taking into account the vulnerability of the victims in these cases, his prior failure to register on more than one occasion, his violent history towards women and the inference that the sentence imposed in the prior convictions in the instant offense did not sufficiently deter his conduct, I believe that an upward variance from [the] Chapter 7 guidelines and an 18-month sentence will protect the community from future crimes of this defendant, allowing for both reimposition of a term of supervised release and additional custody.

I have every belief, Mr. Tinney, you'll continue to engage in noncompliant, high-risk behaviors, in that you've spent . . . at least the last 50 years doing so.

The district court also imposed another five-year term of supervised release. Attendant to that term, the court reimposed Tinney's supervised-release conditions and added some new ones. One of the previously imposed (and reimposed) conditions for supervised release stated: "The defendant shall answer truthfully all inquiries by the U.S. Probation Officer and follow the instructions of the U.S. Probation Officer." Tinney objected to none of this.

## II.

Tinney now seeks to challenge his sentence as procedurally erroneous and the "follow instructions" supervised-release condition as unlawful. As

4

No. 20-10849

Tinney concedes, his arguments were not preserved below, so we review them only for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009); Fed. R. Crim. P. 52(b).

To establish plain error, Tinney must show (1) an error (2) that is clear, rather than subject to reasonable dispute, (3) which affected the outcome below, and which (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted). Tinney cannot make the requisite showing.

## A.

Tinney first argues the district court erred in calculating his revocation sentence. He says the district court's reference to "his Category VI criminal history" shows the court conflated criminal history *score* with criminal history *category*—two distinct terms used in the Sentencing Guidelines.

It is undisputed that Tinney's criminal history *category* was three, while his criminal history *score* was six. But it is unclear whether the district court erred at all. And it is clear that any error did not prejudice Tinney.

First, it isn't obvious the district court actually believed Tinney had a criminal history *category* of six. The court's misstatement appears to be an offhand remark during a colloquy with defense counsel regarding whether Tinney could safely return to a nursing home. In the portion of the sentencing hearing where the district court actually explained its upward variance, it correctly stated that Tinney's criminal history *score* was six. Moreover, we know the district court relied on the correct criminal history category because it noted the correct Guidelines range (5–11 months) for offenders who fall in category III, not IV. *See* U.S.S.G. § 7B1.4(a).

5

Given that the district court correctly stated the facts in its sentencing pronouncement and recognized the correct Guidelines range, Tinney can show no more than the district court made a one-word misstatement. Although such a misstatement might be an error in the colloquial sense, it is not a cognizable error in the legal sense. *Cf. United States v. Izydore*, 167 F.3d 213, 222 (5th Cir. 1999) (explaining that a "single misstatement" does not enter "the realm of clear error"); *Error*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[A] belief that what is false is true or that what is true is false."). Indeed, it would be a perverse result if a defendant could lie behind the log during a hearing, say nothing about a district court's one-word, later-corrected misstatement during a background portion of the proceeding, then win relief on appeal without any evidence to distinguish between a potential error and a solecism.

Second, and in all events, any error did not prejudice Tinney. The district court started with the correct Guidelines range. *Cf. Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345–46 (2016) (noting that plain error can attach where the district court relies on the incorrect Guidelines range). Then it mentioned "the vulnerability of the victims in these cases . . . and the inference that the sentence imposed in the prior convictions in the instant offense did not sufficiently deter his conduct." It further explained that "an upward variance from Chapter 7 guidelines and an 18-month sentence will protect the community from future crimes of this defendant." The district court thus gave a robust, non-erroneous explanation for its upward departure. Given all this, the district court's misstatement—even if error— was not a prejudicial one. *See Puckett*, 556 U.S. at 135; *United States v. Price*, 516 F.3d 285, 289 (5th Cir. 2010) (noting a sentencing error affects a defendant's substantial rights when he "can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence" (quotation omitted)).

B.

Next, Tinney argues the district court unlawfully delegated judicial authority in directing him to "follow the instructions of the U.S. Probation Officer." Again, we find no plain error.

Our court has held that district courts may not require criminal defendants to follow "lifestyle . . . restrictions or treatment requirements imposed by [a] therapist" as a condition of supervised release. *United States v. Iverson*, 874 F.3d 855, 860–61 (5th Cir. 2017); *accord United States v. Huor*, 852 F.3d 392, 403 (5th Cir. 2017); *United States v. Morin*, 832 F.3d 513, 516–17 (5th Cir. 2016). But the cases announcing and applying that rule do not control here. Tinney challenges the district court's delegation of authority to a *probation officer*, not to a *therapist*. And that distinction matters. Unlike the unfettered authority of a private therapist, a probation officer's authority to "instruct" a criminal supervisee is substantially limited by statute. *See* 18 U.S.C. § 3603(1) (providing that a probation officer "shall . . . instruct a probationer or a person on supervised release, who is under his supervision, *as to the conditions specified by the sentencing court*" (emphasis added)); *cf. Morin*, 832 F.3d at 518 (invalidating delegation to therapist because it "vests a private therapist with the ability to impose 'lifestyle restrictions' that are potentially unnecessary to the treatment process"). And unlike private therapists, probation officers are appointed by, and serve at the pleasure of, the district courts. 18 U.S.C. § 3602(a) ("A district court of the United States shall appoint qualified persons to serve . . . as probation officers . . . ."); *cf. Iverson*, 874 F.3d at 861 (invalidating delegation to therapist because it "usurps a judge's exclusive sentencing authority").

The upshot is that our court has not extended *Iverson* to a case like this. That is fatal to Tinney's claim of plain error. *See United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009) ("Even where the argument requires only

No. 20-10849

extending authoritative precedent, the failure of the district court to do so cannot be plain error." (quotation omitted)).

AFFIRMED.