# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2022

Lyle W. Cayce
Clerk

No. 21-30433

United States of America,

*Plaintiff—Appellee*,

*versus*

Adrian C. Hammond, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CR-132-1

Before Owen, *Chief Judge*, and Clement and Engelhardt, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Adrian C. Hammond, Jr. pleaded guilty to bank fraud, money laundering, and obstructing the administration of internal revenue laws in 2017. At sentencing, the district court granted him a U.S.S.G. § 5K1.1 downward departure and a downward variance. It then sentenced him to one year and one day of imprisonment with three years of supervised release. Hammond was released in August of 2019.

On March 29, 2021, the United States Probation Office (USPO) filed to revoke Hammond's supervised release, alleging two Class C violations.

No. 21-30433

Hammond admitted to the first violation and the district court found him guilty of the second violation. The district court calculated Hammond's guideline range at 5 to 11 months. It then upwardly departed pursuant to § 7B1.4 cmt. n.4 and imposed a 24-month sentence, stripping him of the previous benefits afforded to him. Hammond timely appealed, claiming that the district court failed to put him on notice that it might upwardly depart under § 7B1.4 cmt. n.4. We affirm the district court's sentence.

I.

On November 6, 2016, a federal grand jury returned an indictment against Hammond. The indictment was superseded on May 23, 2017. Following the superseded indictment, Hammond pleaded guilty on August 23, 2017, to bank fraud, money laundering, and obstructing the administration of internal revenue laws. His white-collar scheme included the following: (1) he knowingly and intentionally defrauded a bank when he provided it with falsified documents to obtain a loan; (2) he then laundered some of the proceeds from that loan; and (3) he did all this while attempting to subvert IRS' efforts to collect taxes by filing false court documents and engaging in business transactions intended to conceal his earnings.

After pleading guilty and initially refusing to cooperate with law enforcement, Hammond eventually provided the authorities with some information. As the government describes in its brief, however, that information "warranted only a 'very modest benefit.'" The government accordingly recommended a one-point reduction under U.S.S.G. § 5K1.1.

On August 22, 2018, the district court held Hammond's sentencing hearing. According to his presentence report, Hammond initially faced 41 to 51 months of imprisonment as a Level 20, category III offender. The district court then granted Hammond a § 5K1.1 one-level reduction for his

substantial assistance to authorities, resulting in a guideline range of 37 to 46 months of imprisonment. Pleading for mercy, Hammond asked that the court forgo the guideline recommendation and impose a 24-month sentence instead. Citing, among other things, his status as an employer, his acceptance of responsibility, his letters of support, his "stellar performance" in adhering to his pretrial supervision obligations, and his contrition, Hammond argued that he was deserving of a downward variance.

The district court agreed that Hammond was deserving of leniency and cut his request for a 24-month sentence in half, sentencing him to one year and one day of imprisonment followed by three years of supervised release. In support of its variant sentence, the district court stated:

> I believe that you are going to turn your life around, that you've already begun to turn your life around and that you're never going to darken the door of a courtroom like this ever again, and that is one reason that I'm going to cut you the slack that I'm going to cut you in terms of the sentence that I'm going to impose.

The district court also pointed to the amount of restitution Hammond owed ($258,719.59) and his status as an employer of convicted felons as support for its decision.

Hammond was released from custody approximately one year later. According to the government, "[a]lmost immediately [after his release], [Hammond] began disregarding the release condition that required him to participate in drug testing." For instance, the government cites Hammond's failure to routinely call into the automated "Code-A-Phone" system—a system that informs an offender if he must report for a drug test. The government further alleges that Hammond refused to submit to a drug test at least one of the times that the system prompted him to get tested.

No. 21-30433

Aside from drug testing, the government also claims that Hammond provided the USPO with incomplete financial information. Hammond purportedly reported that he had no vehicles, no real estate, no anticipated assets, and no cash. He also claimed that he had never filed an income tax return. Shortly after these reports, Hammond notified the USPO that he would be earning $10,000 for a concert. The government alleges that Hammond provided no documentation of this payment and that he failed to use any of those profits toward the satisfaction of his restitution obligation. To make matters worse, Hammond disclosed back tax obligations "between $5,000.00 and over $692,205.00" to the USPO on January 19, 2021.

In March of 2021, the USPO filed a petition to revoke Hammond's supervised release. The USPO based its petition on two supposed violations that occurred that very month. First, the USPO alleged that Hammond failed to report his contact with law enforcement within the allotted 72-hour window. Hammond was arrested for driving under the influence. After law enforcement pulled him over for traveling over 100 miles per hour and determined that he was intoxicated, they discovered that he possessed THC gummies, a THC vape cartridge, and over $10,000 in his car. According to the USPO, Hammond notified his supervisor of his arrest after the 72-hour mark.

Second, ten days after his arrest, Hammond allegedly sent an impersonator to the AccuScreen drug testing office to take his test for him. The impersonator was turned away when he could not produce an ID. The USPO consequently claimed that Hammond should be found guilty of attempting to obstruct or tamper with a mandatory drug test. As a result of these allegations, a preliminary revocation hearing was held on March 25, 2021. At the preliminary hearing, a magistrate judge imposed additional

conditions of release pending a full revocation hearing, which was eventually scheduled for July 15, 2021.

Prior to the revocation hearing, the USPO submitted a violation worksheet, and the government submitted a revocation sentencing memorandum. Both the worksheet and the memorandum discussed the possibility of an upward departure pursuant to § 7B1.4 cmt. n.4.

At the revocation hearing, Hammond admitted to the first violation—failure to timely report his contact with law enforcement. The court then considered the evidence surrounding the second violation. An AccuScreen employee who met Hammond in person "[i]n excess of 40 to 50" times over the past four-and-a-half years testified that another man came into AccuScreen on March 16, 2021, with Hammond's Code-A-Phone card. The man claimed to be Hammond and attempted to take a drug test. Because the employee was certain that the man was not Hammond, he confronted him and required him to submit another form of identification. The supposed impersonator stated that his ID was in his vehicle, exited the office, got into his truck, and left. The court concluded that Hammond was also guilty of the second violation—obstructing or tampering with a mandated drug test.

Hammond faced a statutory maximum penalty of five years because of his violations. His guideline range, on the other hand, was 5 to 11 months given his two Class C violations and criminal history category (3). During allocution, Hammond again asked for leniency, stating that he made

mistakes, but he was getting his life on track and had paid $10,000 in restitution.[1]

This time, the district court rejected Hammond's plea for leniency. Instead, the district court upwardly departed, sentencing Hammond to 24 months of imprisonment. In support of its decision, the district court reasoned as follows:

> I want to say on the record that the violation undermines and negates the leniency that I granted to the defendant in his original sentencing. I believe the manner in which he has conducted himself during the course of time since the time of his getting out of jail from the original sentence, he's breached the trust that this Court placed in him by failing to abide by the conditions of supervision in a way which was described not only in the evidence today, but also in the documents that I reviewed.

The district court went on to say that the guideline range was a "grossly inadequate" recommendation for Hammond's "incomprehensible" conduct. It further pointed out that Hammond initially received an approximately 14-month benefit at his original sentencing due to its decision to grant him a § 5K1.1 downward departure. That benefit was then multiplied when the district court, believing Hammond to be largely rehabilitated pre-sentencing, imposed a variant sentence with a 25-month total reduction. Given these facts, the district court revoked the original sentencing benefits afforded to Hammond pursuant to § 7B1.4 cmt. n.4. Defense counsel objected to "the Court's ruling."

---

[1] The government notes that the approximately $10,000 payment was made the day prior to the revocation hearing. Prior to his preliminary revocation hearing, Hammond had only paid $900 toward his restitution.

Hammond timely filed a notice of appeal. After obtaining new counsel, Hammond sought to stay the notice. The district court granted the requested stay, Hammond filed a motion to reconsider the revocation, or at least the revocation sentence, and sought to introduce new supporting evidence to aid his requests. The district court ultimately found that it lacked jurisdiction to consider Hammond's motion because of the appeal. In any event, it concluded that "even if [it] could grant the relief [Hammond sought], [it] would not be inclined to do so."

## II.

According to Hammond, the court should review the district court's failure to put him on notice of its intent to upwardly depart for abuse of discretion. The government, on the contrary, argues that the court should employ a plain error standard of review. We agree with the government.

At the end of Hammond's revocation hearing, Hammond's attorney made the following objection: "Just a note of objection to the Court's ruling, Your Honor." Counsel did not elaborate any further. This objection is not "sufficiently clear" to preserve Hammond's notice challenge. *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012). Indeed, it is a well-known tenet of law that any issue not properly raised below is forfeited and only reviewed for plain error on appeal. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Consequently, Hammond's reliance on *United States v. Zuniga-Peralta*, 442 F.3d 345 (5th Cir. 2006), is misplaced and we will review for plain error. [2]

---

[2] The government reads Hammond's brief to present three issues on appeal, not one. Even if Hammond attempted to raise substantive reasonableness and evidentiary issues to the court, we would only consider the notice issue. In the entirety of his brief, Hammond cites a mere two cases—one of which is for the standard of review—a

No. 21-30433

"To establish plain error, [Hammond] must show (1) an error (2) that is clear, rather than subject to reasonable dispute, (3) which affected the outcome below, and which (4) seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Tinney*, 3 F.4th 147, 150 (5th Cir. 2021) (per curiam) (cleaned up) (citing *Puckett*, 556 U.S. at 135).

### III.

The district court was not required to put Hammond on notice that it might upwardly depart pursuant to § 7B1.4 cmt. n.4; nonetheless, Hammond was put on notice. Under § 7B1.4(a), a defendant who commits a Class C violation with a criminal history category of 3 faces a recommended 5 to 11 months of imprisonment. Section 7B1.4 cmt. n.4, however, provides:

> Where the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), or a charge reduction that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted.

According to Hammond, Federal Rule of Criminal Procedure 32(h) requires a district court to give a defendant notice of its intent to upwardly depart under § 7B1.4 cmt. n.4. Hammond claims that because no such notice was given, his Rule 32(h) and due process rights were violated. We disagree.

---

subsection of the sentencing guidelines, and Rule 32 of the Federal Rules of Criminal Procedure. These authorities go to his notice argument. As for the other two issues, his brief lacks legal authority, separate headings, standards of review, and adequate record cites. Therefore, we will not address them. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) ("Generally speaking, a defendant waives an issue if he fails to adequately brief it." (first citing *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000), then citing what is now FED. R. APP. P. 28(a)(8)(A))).

Rule 32(h) provides as follows:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

The question before us, then, is whether notice is required in the § 7B1.4 cmt. n.4 revocation context. The answer is no. Consider the framework before the court. A defendant sentenced to supervised release is subject to a variety of conditions. To enforce those conditions, Congress enabled a district court to revoke a defendant's supervised release if it found, by a preponderance of the evidence, that said defendant violated a condition of his release. *See* 18 U.S.C. § 3583(e)(3). After making its evidentiary finding, the district court would then turn to U.S.S.G. § 7B1.4—which is comprised of a series of policy statements—to consider the recommended sentence.

But policy statements are advisory, including Chapter 7 policy statements regarding § 3583(e) revocations. *See United States v. Mathena*, 23 F.3d 87, 90–91 (5th Cir. 1994); *see also United States v. De La Rosa*, 263 F.3d 162, 2001 WL 803556, at *1 (5th Cir. 2001) (per curiam) (same). Indeed, we previously held that diverging from Chapter 7's policy statements does not constitute a departure—i.e., departing pursuant to a Chapter 7 policy statement is not akin to departing pursuant to § 3553(b), which *does* require notice. *Mathena*, 23 F.3d at 93 n.13; *see also United States v. Gonzalez*, 275 F. App'x 378, 379 (5th Cir. 2008) (per curiam) ("The same stringent due process and Rule 32 standards regarding notice of factors for departures under the guidelines do not apply to departures from non-binding, advisory policy statements." (cleaned up)). Hammond's reliance on Rule 32(h) is

therefore misplaced and he is unable to demonstrate plain error as the district court was not required to put him on notice.

Even if we assumed that the district court was required to comply with Rule 32(h)'s strictures, Hammond's argument falls short. Rule 32(h) requires a district court to give a defendant notice of its intent to depart *only* when it intends to rely on a ground "not identified for departure either in the presentence report or in a party's prehearing submission." That is not the case here. The government's sentencing memorandum—filed approximately two months prior to the revocation hearing—argued that a § 7B1.4 cmt. n.4 upward departure might be appropriate. Further, the USPO's violation worksheet—distributed a few weeks prior to the hearing—explicitly stated: "The defendant's original sentence was the result of a downward departure that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, therefore an upward departure may be warranted upon revocation." Hammond was plainly afforded the notice he claims he was entitled to. He cannot demonstrate that the district court committed plain error.

AFFIRMED.